IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRUE COLOURS, INC. | ) | |
| | ) | |
| Debtor. | ) | Case No.20-10845-SAH |
| _____ | ) | Chapter 11 |
| | ) | |
| FIRST NATIONAL BANK & TRUST | ) | |
| COMPANY WEATHERFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 20-01048 |
| | ) | |
| TRUE COLOURS, INC., an Oklahoma | ) | |
| corporation; and RCB Bank, an | ) | |
| Oklahoma banking corporation, | ) | |
| Debtor. | ) | |
| _____ | ) | |

## AMENDED ADVERSARY COMPLAINT

COMES NOW, First National Bank & Trust Company, Weatherford, Stillwater branch (hereinafter, "First National Bank Weatherford") and for its Complaint to Determine the Non-Dischargeability of the debt owed to First National Bank Weatherford, and for other relief, and alleges and states:

1. First National Bank Weatherford, Stillwater Oklahoma branch, is a secured creditor in this proceeding. First National Bank Weatherford holds a perfected security interest in a inventory, accounts, general intangibles and equipment of True Colours, Inc. (the "Debtor").

2. Debtor believes that the collateral in Debtor's possession is not of sufficient value so that not all of First National Bank Weatherford's claim is secured. In fact,

according to the Debtor, only about one-third of First National Bank Weatherford's claim is secured by the collateral list by First National Bank Weatherford, because there is a prior security interest in the same collateral which is held by RCB Bank, Stillwater, OK.

3. Based on the proposed Plan of Reorganization filed by the Debtor, the reason this is important is because the Debtor proposes to pay IN FULL <u>only</u> the secured portion of the debt owed to First National Bank Weatherford. Although the Plan of Reorganization is somewhat ambiguous, it appears that only a portion of the debt owed to First National Bank Weatherford, which Debtor alleges is unsecured, will be repaid to First National Bank Weatherford. The remainder of the unsecured debt will be discharged in the bankruptcy proceeding filed by the Debtor.

4. The purpose of this adversary proceeding, then, is to find that Debtor obtained the loan from First National Bank Weatherford using fraud, by failing to disclose the full extent of the existence of the prior debt owed to RCB Bank.

## Statement of Facts

5. Debtor obtained the loans from First National Bank Weatherford in December, 2019, only 3-4 months before Debtor filed for bankruptcy protection. The debt is actually made of two different loans - one for $250,000.00, which is to be repaid over a 5 year period, and a second loan of $100,000.00, which is due and payable within one year of the date of the loan. (The $250,000.00 loan and the $100,000.00 loan shall be referred to collectively as the "Loans"). In addition, there is a small amount of money, $4,811.64, which is owed by Debtor on a line of credit which was used by Debtor as overdraft protection. See, promissory notes for the Loans, attached as Exhibit "A" hereto.

6. The Loans were secured by perfected security interests in the Debtor's inventory, accounts, equipment and general intangibles. See, Commercial Security Agreement for each of the Loans, attached as Exhibit "B". In addition, the Loans were secured by Brian Hobbs' personal guaranty of the debt owed to First National Bank Weatherford. Brian Hobbs is the President and sole owner of the Debtor, True Colours, Inc. See, Commercial Guaranty, attached as Exhibit "C".

5. The Loans which Debtor obtained from First National Bank Weatherford were intended by Debtor to pay off certain loans made to Debtor by RCB Bank, Stillwater, Oklahoma. Brian Hobbs, the President and sole owner of the Debtor, represented to First National Bank Weatherford that the Loans made to Debtor by First National Bank Weatherford in December, 2019, would pay off in full the debt owed by Debtor to RCB Bank.

7. Many times during the loan process Brian Hobbs informed First National Bank Weatherford that the Debtor was getting everything paid off at RCB Bank, and that, starting in 2020, all of the Debtor's loans and accounts would be consolidated at First National Bank Weatherford. See, emails from Brian Hobbs, President and sole owner of Debtor, to Cecily Morris, branch manager of one of First National Bank Weatherford's branches in Stillwater, Oklahoma, attached as Exhibit "E".

8. First National Bank Weatheford had run a UCC search prior to making the Loans to the Debtor, and the only debt owed by Debtor which would have priority over First National Bank Weatherford was debt owed to RCB Bank. However, because First National Bank Weatherford thought it was paying off RCB Bank in full, it did not worry about the first

position of RCB Bank, because First National Bank Weatherford thought this debt would be paid in full from proceeds from the Loans made to Debtor.

9. First National Bank Weatherford relied upon the representations of Brian Hobbs that the debt owed by Debtor to RCB Bank would be paid in full by the new Loans made to Debtor by First National Bank Weatherford. In particular, First National Bank Weatherford believed that, when RCB Bank was paid in full from the proceeds of the Loans, First National Bank Weatherford would have a first priority position with respect to the Debtor's inventory, accounts, equipment, and general intangibles. See, internal credit memorandum of First National Bank Weatherford, which evidences that First National Bank Weatherford believed that all of the Debtor's assets would collateralize the debt owed to First National Bank Weatherford, attached as Exhibit "F". Obviously, First National Bank Weatherford relied on this information in making its decision to make the Loans to Debtor.

10. The payoff letter from RCB Bank was obtained by Brian Hobbs, and not by First National Bank Weatherford's personnel. See, email from Brian Hobbs to Chris Harris, attached as Exhibit "G". Because Mr. Hobbs obtained the payoff letter from RCB Bank, the payoff letter only pays off one loan owed by Debtor to RCB Bank, when First National Bank Weatherford intended to pay off ALL loans owed by Debtor to RCB Bank. See, payoff letter from RCB Bank, attached as Exhibit "H" hereto. And importantly, the payoff letter received by First National Bank Weatherford contained the statement, "Upon receiving the correct payoff, all RCB liens will be released." (emphasis added). Because of this statement contained on the payoff letter, First National Bank Weatherford believed that its security interest in the inventory, accounts, equipment and general intangibles would have first priority in such collateral, because RCB Bank had represented to First

4

National Bank Weatherford that its liens would be released. See, payoff letter from RCB Bank, attached as Exhibit "H" hereto.

11. While the loan documentation evidencing the Loans made to Debtor by First National Bank Weatherford was signed on December 13, 2019, (See, promissory notes attached as Exhibit "A" hereto), the Loans were not funded until December 16 and December 17, 2019. See, cashier's checks evidencing the proceeds from the Loans, attached as Exhibit "I" hereto.

12. Prior to making distribution of the proceeds from the Loans, First National Bank Weatherford required the Debtor to fill out and submit a "Borrowing Base Certificate" showing the dollar value of the collateral which secured the debt owed to First National Bank Weatherford. As this Court can see, the Debtor represented that inventory in the amount of $560,000.00 secured the debt which would be owed to First National Bank Weatherford. More importantly, there is no mention in the Borrowing Base Certificate of any other debt which has priority over First National Bank Weatherford's security interest in the inventory. See, copy of the Borrowing Base Certificate, attached as Exhibit "J". Therefore, at the time that First National Bank Weatherford funded the Loans to Debtor, it believed that it had a first priority lien in the collateral owned by the Debtor, and that the collateral owned by the Debtor was in the approximate amount of $620,000.00, without taking into account the equipment and general intangibles of the Debtor.

13. In addition, as part of the loan transaction to the Debtor, First National Bank obtained a personal financial statement from Brian Hobbs, the president and sole shareholder of the Debtor, because Brian Hobbs agreed to provide personal guaranties for the Loans made by First National Bank Weatherford to the Debtor. Upon information

and belief, Mr. Hobbs executed and delivered to RCB Bank personal guaranties of all of the debt owed by Debtor to RCB Bank.  However, Mr. Hobbs did not list any of the RCB Bank debt (which he personally guaranteed) on the personal financial statement which he submitted to First National Bank Weatherford at the time the Loans were made to the Debtor.  See, Personal Financial Statement, attached hereto as Exhibit "D".

14. Likewise, the Debtor provided additional documents to First National Bank Weatherford constituting assets lists, which included valuations of the assets held by the Debtor.  See, lists of assets, with dollar values, delivered to First National Bank Weatherford by Debtor, attached as Exhibit "K".  When these assets lists were delivered to First National Bank Weatherford by Brian Hobbs, Mr. Hobbs did NOT inform First National Bank Weatherford that, even after the Loans were made, RCB Bank would hold a security interest in these assets to secure a loan in excess of $250,000.00.

15. After First National Bank Weatherford funded the Loans to Debtor, Brian Hobbs contacted First National Bank Weatherford about setting up overdraft protection on the operating account of Debtor at First National Bank Weatherford.  First National Bank Weatherford has a program called First Money Line which is a line of credit expressly used to provide overdraft protection for commercial accounts.  In February, 2020, Debtor, through its President and sole stockholder, Brian Hobbs, filled out a credit application to set up the First Money line of credit for overdraft protection on Debtor's operating account maintained by Debtor at First National Bank Weatherford.  In the First Money Line Application, Mr. Hobbs failed to list any other debt owed by Debtor to RCB Bank.  See, First Money Line Application, attached as Exhibit "L".

16.     It was not until the Debtor filed for bankruptcy in the current action that First National Bank Weatherford found out that there was still a debt owed to RCB Bank by the Debtor, and that RCB Bank claimed a first priority position in the inventory, accounts, equipment and general intangibles of the Debtor.

## Causes of Action

17.     Pursuant to United States Code, Title 11, Section 523(a) (2)(B), a debt for money . . . or an extension, renewal, or refinancing of credit is non-dischargeable, if the debt was obtained by use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

18.     As this Court can see from the exhibits supporting the Statement of Facts above, the Debtor misrepresented to First National Bank Weatherford the status of Debtor's debt owed to RCB Bank by providing the Borrowing Base Certificate (Exhibit "J"), the Personal Financing Statement (Exhibit "D"), and the First Money Line Application (Exhibit "L").

19.     Further, the Debtor, through its President and sole owner, Brian Hobbs, made multiple representations to First National Bank Weatherford, in writing via email, that proceeds from the Loans made by First National Bank Weatherford would be used by the Debtor to pay off its obligations to RCB Bank. In addition, Brian Hobbs made several representations to First National Bank Weatherford personnel to the effect that he was transitioning all of Debtor's banking business over to First National Bank Weatherford, and that the Debtor would no longer be working with RCB Bank, because its debt would be paid

off by the proceeds from the Loans made by First National Bank Weatherford.  (See, emails attached as Exhibit "E").

19.     These written representations were materially false, because they misstated the Debtor's financial position by failing to disclose loans owed by the Debtor to RCB Bank.

20.     In addition, First National Bank Weatherford relied on the payoff statement provided to First National Bank by Brian Hobbs, which contained the following statement:

> "Upon receiving the correct payoff, all RCB Bank liens will be released. Liens and Mortgages and Assignment of Rents will be released. . . ." (Emphasis added).

First National Bank Weatherford relied upon the statement contained on the RCB payoff statement to believe that, once First National Bank Weatherford made the payoff to RCB Bank, as set forth on the payoff statement, that RCB would release its security interests in the Debtor's inventory, accounts, equipment and general intangibles, which would place First National Bank Weatherford with a first priority security interest in the Debtor's inventory, accounts, equipment and general intangibles.

21.     Moreover, First National Bank Weatherford relied on these written, false statements in determining the make the Loans to the Debtor.  See, Credit Memorandum prepared for the the First National Bank Weatherford loan committee (Exhibit "F"), which evidences that upon the payoff to RCB Bank, all of the value of Debtor's inventory, accounts, equipment and general intangibles would secure the debt owed by Debtor to First National Bank Weatherford.  Clearly this was not the case, even though it was represented to First National Bank Weatherford that RCB Bank would release its liens upon receiving the payoff.

22. Last, the Debtor, through its President and sole shareholder, Brian Hobbs, made these written statements with the intent to deceive First National Bank Weatherford into making the Loans to the Debtor, so that First National Bank Weatherford would believe it would hold a first priority secured position in the Debtor's inventory, accounts, equipment, and general intangibles, after making the Loans and providing the payoff to RCB Bank.

23. For the above reason, First National Bank Weatherford believes that the Loans were obtained by Debtor using false, misleading written statements, which were submitted to First National Bank Weatherford with the intention that First National Bank Weatherford would be deceived by these false, written statements, and that First National Bank Weatherford would rely on these false, written statements to make the Loans to Debtor.

24. First National Bank Weatherford did in fact rely on the false, written statements in making the Loans to the Debtor, and because of relying on the false, written statements, First National Bank Weatherford alleges and believes that the debt owed to First National Bank Weatherford should NOT be discharged.

25. In addition, this Court should further determine that, because of the false statements made by the Debtor, First National Bank Weatherford is entitled to be determined to have a fully secured interest in all of the Debtor's property, consisting of inventory, accounts, equipment and general intangibles, and that because First National Bank Weatherford's debt is fully secured, its debt is non-dischargeable.

26. Further, and in the alternative, this Court should determine that the transaction in which the Loans were given to Debtor by First National Bank Weatherford be rescinded, and that the monies paid to RCB Bank by First National Bank Weatherford

should be returned to First National Bank Weatherford, and that RCB's debt be increased by the monies repaid to First National Bank Weatherford, so that RCB Bank maintains its first priority security interest in the Debtor's inventory, accounts, equipment and general intangibles.

27. Last, First National Bank Weatherford requests that this Court grant such equitable relief as this Court can fashion to contend with the fraudulent activities engaged in by Debtor in obtaining the Loans from First National Bank Weatherford.

28. **First National Bank Weatherford, the pleader herein, does consent to entry of final orders or judgment by the bankruptcy court.**

WHEREFORE, PREMISES CONSIDERED, because of the fraud committed by the Debtor on First National Bank Weatherford, this Court should find that (1) the debt owed by Debtor to First National Bank Weatherford is non-dischargable. In addition, First National Bank Weatherford requests that this Court grant a declaratory judgment finding that First National Bank Weatherford's debt is fully secured, and that as such, the debt should be repaid to First National Bank Weatherford in full, so that none of the debt is dischargeable.  Further, this Court should allow the transaction, in which the Debtor obtained the Loans by fraudulent, written statements given to First National Bank Weatherford, be rescinded, and that RCB Bank be ordered to repay First National Bank Weatherford the $190,000 which was paid to RCB Bank by First National Bank Weatherford, and to reinstate the priority of this $190,000 debt owed to RCB Bank by the Debtor. First National Bank also requests that  it be awarded its attorney fees and court costs in bringing this adversary action, again based on the fraud practiced by Debtor in

First National Bank Weatherford. Last, First National Bank Weatherford requests such additional relief, at law or in equity, to which it may be otherwise entitled.

Respectfully submitted,

Houston, Osborn, Sexton & Thomas, PLLC

/s/ Micah D. Sexton
Micah D. Sexton, OBA #13774
Scott K. Thomas, OBA #21842
Attorneys for First National Bank Weatherford
123 W. 7th Ave., Suite 200
P.O. Box 1118
Stillwater, OK 74076
(405) 377-7618 (voice)
(405) 377-8234 (facsimile)
msexton@houston-osborn.com

CERTIFICATE OF SERVICE

This is to certify that a true and correct photostatic copy of the above and foregoing document wtih the summons was mailed by certified mail, postage prepaid, this 1st day of July, 2020, to the persons listed below:

Amanda R. Blackwood
Blackwood Law Firm, PLLC
PO Box 6921
Moore, OK 73153

Gary D. Hammond
512 NW 12th Street
Oklahoma City, OK 73103

This is to further certify that a true and correct photostatic copy of the above and foregoing document was mailed by first class mail, postage prepaid, this 1st day of July, 2020, to all persons listed on the bankruptcy matrix in the above styled case, including the following:

Stephen J. Moriarty
Fellers, Snider
100 N. Broadway Ave., Suite 1700
Oklahoma City, OK 73102-8820
(405) 232-0621

United States Trustee
215 Dean McGee Ave., 4th Floor
Oklahoma City, OK 73102

Karen Walsh
Riggs, Abney, Neal, Turpen, Orbison and Lewis
502 W. 6th Street
Tulsa, OK 74119-1016

John W. Mee, III
Mee Hoge, PLLP
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118

    /s/ Micah D. Sexton
    Micah D. Sexton