IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>TRUE COLOURS, INC.<br><br>Debtor. | Case No. 20-10845-SAH<br>(Chapter 11) |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

### A. Description and History of Debtor's Business

True Colours, Inc. ("Debtor") is a corporation. Since 2012, Debtor has been in the business of florist services and event rental services. Debtor's sole source of revenue is from florist services and event rentals.  With respect to the event rental aspect of Debtor's business, Debtor provides certain items to its customers for weddings and other large events. The types of items Debtor provides for its event rental service include, but is not limited to, tables, chairs, linens, china, and other glassware. When Debtor first became incorporated, it only provided florist services. Then, in 2016, Debtor added the event rental service.

Brian Hobbs is the sole owner and president of Debtor.  Mr. Hobbs is the only insider of Debtor and will be compensated at the rate of $5,000 per month for the remainder of 2020, then $7,500 for January through December 2021, then $10,000 per month for January through December 2022, then $12,000 per month thereafter.  Mr. Hobbs salary will be paid contingent upon play payments being made timely.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. § 1190 is attached to the Plan as Exhibit "A." Pursuant to Schedule B, Debtor contends

that no unsecured creditors would receive anything if this case were a case under chapter 7.

C. **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

Debtor must also show that it will have enough cash flow over the life of the Plan to make the required Plan payments and operate Debtor's business.  Projections that support the Debtor's ability to make all payments required by the Plan are attached to the Plan as Exhibit "B." *See* 11 U.S.C. § 1190.

Debtor's financial projections show that the Debtor will have projected disposable income (as defined by 1192(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) to make all required plan payments.

Debtor will be the disbursing agent for all post-confirmation plan payments. The Subchapter V Trustee, Stephen Moriarty, will not disburse payments on behalf of Debtor.

The final Plan payment is expected to be paid thirty-six months from the date of the entry of the order confirming this plan.

Debtor has attached a three-year projected budget. Debtor created the projected budget taking into consideration the effects of COVID-19. Debtor anticipates that during the first several months after filing of this plan that it will be impacted by COVID-19 and will be limited on what it can pay to its creditors. The attached Exhibit "C" provides a detailed listing of treatment of Debtor's creditors. Exhibit "C" provides that some creditors will begin receiving payments several months after the filing of this plan, which is due to decreased revenue as expected by the Debtor due to the effects of COVID-19.

Pursuant to 11 U.S.C. § 1191(c)(3)(B), in the event that Debtor defaults in payments required pursuant to this plan, creditors may exercise any and all rights and remedies that they

may have to protect their respective interests, including any and all state court remedies.

**ARTICLE 1: SUMMARY**

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one).**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay Debtor's creditors from the revenue generated by Debtor. This Plan provides for[1]:

| (1) | Classes of administrative claims |
|-----|----------------------------------|
| (1) | Classes of priority claims; |
| (1) | Classes of secured claims; |
| (1) | Classes of non-priority unsecured claims; |
| (1) | Classes of equity security holders. |

**Payment of non-priority unsecured claims.** Unsecured Claims - Debtor proposes to pay its Excess Funds to the unsecured creditors over a three (3) year period starting in January 2021. Debtor proposes that such payments will be distributed on a quarterly basis and will be paid thirty (30) days after the end of each quarter. Excess Funds are defined as any amount in excess of two (2) x Debtor 's average monthly operational expenses. Debtor will calculate the average monthly operational expenses by taking the average of the prior three (3) months operational expenses. Any amount in excess of this amount will be distributed 70% to the unsecured creditors and 30% will be retained by Debtor. By way of example , if Debtor 's average monthly operational expenses for the

---

1 See attached Exhibit "C" for a breakdown of the treatment of all debts.

period from January through March 2021 are $100,000, and Debtor has $340,000 in gross revenue

for the quarter ending March 31, 2020, then Debtor will split $140,000 ($340,000 - $200,000) on a

70/30 basis with the unsecured creditors. In this example, Debtor would pay $98,000 ($140,000 x

70%) to the unsecured creditors on April 30, 2020.

**Payment of administrative expenses and priority claims:** This Plan provides for full

payment of administrative expenses and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for

information regarding the precise treatment of their claim.

**Article 2: Classification of Claims and Interests**

**2.01. Class 1:** All allowed administrative claims pursuant to 11 U.S.C. § 503.

**2.02. Class 2:** All allowed claims entitled to priority under § 507(a) of the Code (except

administrative expenses under § 507(a)(2)).

**2.03. Class 3:** All allowed secured claims.

**2.04: Class 4.** All allowed unsecured claims.

**2.05. Class 5.** Equity interests of the Debtor.

**Article 3: Treatment of Administrative Expenses and Priority Claims.**

**3.01: Administrative expenses:** Administrative expenses allowed under 11 U.S.C. § 503

will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be

agreed upon by the holder of the claim and the Debtor.

**3.02: Priority tax claims:** Each holder of an allowed priority tax claim will be paid in

monthly installments over sixty months beginning thirty (30) days after the Effective Date of the

plan.

**3.03: Equity Interests of the Debtor:** Brian Hobbs is 100% owner of Debtor. Debtor will

pay Brian Hobbs a salary of $5,000 per month for the remainder of 2020, then $7,500 per month

for January through December 2021, then $10,000 per month for January through December 2022, then $12,000 per month thereafter.  Mr. Hobbs salary will be paid contingent upon play payments being made timely.  Brian Hobbs will retain 100% of his equity interest in the newly reorganized Debtor.

**Article 4: Treatment of Other Claims and Interests Under the Plan:**

See attached Exhibit "C" for a breakdown of the treatment of claims.

**Article 5: Allowance and Disallowance of Claims**

**5.01: Disputed claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

(i) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

**5.02: Delay of distribution on a disputed claim:** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03: Settlement of disputed claims.** Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

**Article 6: Provisions For Executory Contracts And Unexpired Leases:**

(a)  Debtor assumes the following executory contracts and unexpired leases as of the effective date of the Plan:

(1)  Lease for commercial real property with L&J Realty;

(2)  Lease for commercial real property with Odd Fellows Development Group, LLC;

4)  Lease for personal property with Enverto.

(b)  Except for executory contracts and unexpired leases that have been assumed, and if applicable, assigned either before the effective date or under section 6(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. Specifally, Debtor rejects the three (3) leases with Pawnee Leasing Corporation.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date on which the Court enters the order confirming this Plan.

**Article 7: Means for Implementation of this Plan:**

Debtor will fund the Plan from its operations as a florist shop and event rental business.

**Article 8: General Provisions:**

**8.01: Definitions and rules of construction:** The definitions and rules of construction set forth §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**8.02: Effective date:** The effective date of this Plan is the day that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**8.03: Severability:** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision in this Plan.

**8.04: Binding effect:** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.05: Captions:** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.06: Controlling effect:** Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Oklahoma govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.08: Retention of Jurisdiction**: The Court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

**Article 9: Discharge:**

If Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that Debtor will not be discharged of any debt:

      (i)     Imposed by this Plan; or

      (ii)    To the extent provided in § 1141(d)(6).

If Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due within the first three (3) years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

      (i)     On which the last payment is due after the first three (3) years of the plan, or as otherwise provided in § 1192; or

      (ii)    Excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully Submitted,


/s/ Gary D. Hammond
Gary D. Hammond, OBA# 13825
MITCHELL & HAMMOND
An Association of Professional Entities
512 N.W. 12th Street
Oklahoma City, OK  73103
405.216.0007 - Telephone
405.232.6358 - Facsimile
gary@okatty.com - Email
**ATTORNEY FOR DEBTOR**



/s/ Amanda R. Blackwood
Amanda R. Blackwood, OBA #33839
BLACKWOOD LAW FIRM, PLLC
PO Box 6921
Moore, OK 73153
405.633.1464 -Telephone
405.378.4466 – Facsimile
amanda@blackwoodlawfirm.com – Email
**ATTORNEY FOR DEBTOR**



## CERTIFICATE OF MAILING

I certify that I served the foregoing document filed on June 8, 2020, using the Courts ECF system to the following:

Office of the Assistant U.S. Trustee

Further, I certify that on June 8, 2020, a true and correct copy of this document was forwarded via U.S. Mail, first class, postage prepaid and properly addressed to the following at the addresses on Exhibit D.

/s/ Amanda R. Blackwood
Amanda R. Blackwood